Very good. Do you want to reserve any time? I do, Your Honor. How much? Well, two or three minutes, Your Honor. I'll just try and question the court. Two minutes? Yes. Okay, very good. Please proceed. Thank you. Your Honor, the simple issue raised by this Court is whether or not this Court, I mean, by this case, whether this Court should sustain a decision by the side Mukasey, who doesn't say hardly anything about asylum law, he simply says very clearly that this case does not raise the level of prosecution for which asylum should be granted. In fact, he doesn't even go that far. He simply says that just because it's credible doesn't mean it should be granted asylum, and that's all the case says. And I'm a little bit surprised the BIA would simply summarily affirm a decision like that. It's almost pithy in its analysis. So from that basis, I do think this Court should look at the case a little more closely. I did read both briefs by the Respondent and also the supplemental letter, and they raised a few questions that I think can be addressed also by looking at the facts of the case. On the initial matter, I do think that the credibility issue is not contested, so the Court has to accept the evidence and record that includes Respondent's petitioner's testimony and his declaration as being the facts of the case. And if the Court does that, the Court would note that even though in the 22J letter that I'm sorry. If we conclude that the Zhang case is indistinguishable from this case, is it your position that we should reverse the BIA and grant the withdrawal or removal or send it back to the BIA for reconsideration of the withholding? Well, if it's indistinguishable from this case, I do think the Court should grant the case, because I do think that both of them address country conditions. And my understanding is that when the country conditions is not being contested, then there's no issue of having to remanage the BIA, because the Court would have all the information here to look at to make a decision. So I do think in that case the Court should reverse the case. And if I may continue, Your Honor. The Zhang case, again, the government tries to argue that the Zhang case is indistinguishable from this case because it's not a court leader. But I think that distinction is not. It's a different, but not a court. The government does have a particular interest in a petitioner, and they did make efforts to arrest him before. And even though they try to argue that it was because of his union leadership, I do think his declaration on page 179 of the record shows that they did try to arrest him because they arrested the leader, and they tried to arrest those around the leader. So I do think in that case the nexus is established. And even though they also argue that he will be subjected to lower level of persecution, which they argue does not rise to the level of torture, I do think that if you read through the contrary reports, particularly on page 102, actually from 101 to 102, it does indicate that several people in the reeducation camps were tortured, including being tortured with electric shocks. I do think those sort of treatment has risen to the level of torture in several cases before this Court. And this is on page 1. On page 102 of the AR, it indicates that they could hold him in custody for up to three years. And it also, on page one, excuse me, on page 101, and the first paragraph, it says there were numerous federal reports of abuse of found gun petitioners by the security personnel, including police involvement in beatings, detention, under extreme harsh conditions and torture. So I do think that sort of belies the government's argument that he will not be tortured just because he goes to reeducation. And so, but really, Your Honor, the strongest reason to reverse this case is because if he's found credible and he does have a religious reason why the government want to arrest him in China, I do think that under the case law of this Court, he will be granted asylum. You acknowledge that the standard for obtaining withholding of removal is much lower than compliance with the standard of CAT. What evidence can you cite that your client produced that he was eligible for CAT relief? Well, Your Honor, the standard of CAT is more likely than not that he would be found credible. So in this case, he was found credible. So I don't think we need to discuss issue of evidence in this case. But under the case law of this Court, if he is found credible and he does have a subjective fear, I think that's what the credibility finding does show, then you have to look at the country conditions and look at the overall documents surrounding the case to decide whether or not the fear is objective. If the fear is objective, and we do argue that the fear is objective... But under, at least as I look at them, similar facts under Zhang and Zhao, the Court found that, based upon the country reports, that those people were ineligible for CAT. It's a different issue with withholding removal, but for CAT. How do you distinguish those cases from this case? Well, Your Honor, I think that the Zhang case relied heavily on a testimony of Dr. Lisley, who is a professor at, I think, University of Virginia. I don't have it in my head exactly, but he testified that there were two different, there were core party members who were tortured and treated much harshly, and then the lower level members were sent to re-education camps. And according to Dr. Lisley, the re-education camps themselves did not rise to the level of torture. That's what the Court held in Zhang. And I would point out to the Court that that's based on the facts of that case, and also based on Dr. Lisley's testimony. In this case, I'm relying on the country reports in the record, and the country reports indicate that, despite what Dr. Lisley might have said in a different case, for which he was not challenged, the country reports themselves indicate that the re-education camps themselves were no club feds, that they were still, you know, would rise to the level of torture based on the facts contained in the country reports. And so this is why I cited the page 100 of the record in showing that they do electric shocks at people in re-education camps. So I think under the case law of this Court, anybody who does go through electric shocks, the treatment would rise to the level of torture. That's based on past torture? It's based on the country conditions, what they believe happens in the country itself in the re-education camps. And also the fact that they could be in the re-education camp for three years, they could be held without charge for up to three years, and they could be, and so I do think that does rise to the level of torture, despite what the evidence was in the Zhang case. Do you want to hold the balance of your time? Yes, Your Honor. We certainly never want anyone to feel like he or she has to stand up there longer than they want to. Thank you very much. I think I've stood long enough. Thank you. We'll have you come back in just a moment. We're going to hear now from, is it Hayes, is that correct? Hayes. Hayes, I'm sorry. Mr. Hayes, please. Good morning, Your Honors, and may it please the Court, Michael Hayes on United States Attorney General. As Petitioner concedes, there's only one question before this Court today, and that's whether substantial evidence supports the agency's conclusion that Mr. Yao failed to show that he proved a clear probability that he faces persecution or torture if he is returned to China or if he returns to China. That it would be more likely than not that he would be persecuted if he were returned. Correct. He has failed to show that. In this case, and as the Court has acknowledged, the Zhao and Zhang decisions, those are easily distinguishable from the facts at hand. In this case, Yao is clearly not a core leader. He has not held himself out to the Chinese government in any way as someone that is actively opposed to the government, aside from the fact that he practices Falun Gong. He has not participated in demonstrations. He has not disseminated or collected anti-Chinese government, pro-Falun Gong media reports or other materials like that. He has not recruited any members. Let's see. His testimony, I guess, was that he was, what, assisting the person? He claimed to be an assistant leader, yes, Your Honor. Aside from that, there is nothing to suggest what that means. There's nothing to suggest that he was more than just a right-hand man, necessarily. But in the Zhang case specifically and in the Zhao case, those were individuals that engaged in activities that the Chinese government particularly considered as anti-government. There are outward expressions of anti-government sentiment in the Chinese government. The country conditions sort of led me to believe that they consider the Falun Gong generally to be a threat to this. Yes. The country conditions do reflect that the Chinese government does view Falun Gong practice adversely. But the fact of the matter is those same country reports on page 120 of the record suggest that the majority, the vast majority of Falun Gong practitioners are punished administratively. They are not jailed. They are not necessarily tortured. They are not beaten. They are not necessarily subjected to harsher treatment, which this Court discussed in Zhang and Zhao, which is reserved for court leaders. How do you punish administratively? What do you do? That, I'm sorry, is not more specifically delineated in the record, but suffice to say it would suggest that it's not nearly rising to the level of persecution, which this Court has said that persecution needs to be something more than mere harassment. It can be a lot of things, but it needs to be substantial. It needs to be more than just being bothered. And also, specifically in this case and also in the Zhao and Zhang cases, there needs to be a showing that this individual petitioner was selectively pursued, that the government has a particular interest in this person. In this case, the facts show that the petitioner was last visited, or at least his family's home was last visited by the police in 2000. And this was 2003 when the immigration judge is making his decision. That's three years where there's absolutely no interest in him on account of his Falun Gong practice, if that is, in fact, why the government was pursuing him in the first place. How does the government distinguish on the withholding of removal portion of this matter, the Zhang case? I'm having difficulty distinguishing it. Can you help me with that? Well, again, in Zhang, it was an issue where the petitioner engaged in outwardly clear anti-government activities by disseminating pro-Falun Gong materials, engaging in protests. His family was involved in protests. You've admitted this gentleman was a right-hand person to somebody who clearly was in the government's sights. He happened to leave, if you will, at a convenient time. But hasn't he met the standard of proof necessary for withholding of removal under Zhang? No, Your Honor. You don't think so? No. Why is that? Specifically because consider those that are similarly situated to Mr. Yao as compared to Mr. Zhang, the leader in his situation, and compared to the discussion in Zhang and Zhao of what it means, and in the country report, in terms of who is subjected to persecution on account of their Falun Gong practice. And that's the important perspective here is that it's core leaders, people that engage in clear anti-government conduct. You're suggesting that a right-hand person is not a core leader. I would say it's perhaps my own fault to call him a right-hand man. That is actually not in the record, so I'd caution the Court to not consider that as any kind of suggestion. He certainly was a trusted assistant to the person who was directly targeted. Do you agree with that? I could agree with that. The facts in the record don't suggest exactly what he did, other than claiming to be an assistant leader. There's nothing to suggest exactly what that involved. And it's important to note that no one else in Mr. Zhang's group, in his individual group, has been subjected to any persecution that's in the record. No one else was arrested. And it's also unclear from the record in this case whether Mr. Zhang himself, the leader, was arrested on account of his Falun Gong practice. It's possible. It's an inference. But he initially went to Beijing to participate in the demonstrations and request that the government recognize Falun Gong, and that was in April. Yet he was allowed to go free until September 1990. He was not arrested for another five months. The real crackdown against the Falun Gong came after he left the country. I'm sorry? The real crackdown on Falun Gong by the Chinese government came after he was out of the country. That's correct, Your Honor.  Well, he's claiming only future. He claims that he will be subjected to future persecution. But again, to qualify for that, a petitioner in his position needs to show that the Chinese government has a particularized interest in him. They need to be looking for him specifically. And in the context of what we have from the country reports and in the record in this case otherwise, people that are mere practitioners, while subjected to a mass propaganda campaign and pressures from community and other friends, coworkers, things like that, there's no suggestion that they are persecuted to the same level as someone that is considered a clear anti-government pro-Falun Gong, more than a mere practitioner. One of the things that I'm having trouble with here, according to the administrative record, page 40, the IJ found Mr. Yao to be credible. So we have to take that as a given. And when the leader of his Falun Gong group was arrested in 1999, the police went to Yao's home to look for him. Why did they do that if he was of no interest to them? Well, it's a question of whether or not he is still of interest to them. And it's curious in terms of what exactly they wanted to talk to him about. Again, this is a question of whether or not that rises to the level of persecution. He's not, again, not claiming past persecution. He's claiming only future persecution. But in the context of mere visits from the police and discussions, that I would submit is perhaps harassment at its worst, but that's something that we as Americans subject ourselves to. Well, according to the administrative record, page 189, the police targeted his home because he practiced Falun Gong. Does the government dispute that? That is in the record. Okay. But, again, that was in 2000. I understand that. And that was his last visit. He's claimed they came on holidays. Okay. They kind of came every few days. He had difficulty explaining exactly what every few days was. And then from there on, it was basically just on Chinese national holidays, I assume they were expecting to find him at home. And then the Chinese government basically gave up from the sound of things in terms of the record. That in and of itself shows that they do not have a particularized interest in Mr. Yao. If the Court has no further questions. I don't believe so. Thank you very much. Thank you, Your Honor. Would you like time for rebuttal, sir? Okay. Please. Your Honor, just a couple of quick things. I understand I was not involved in this case until very late. May I request the Court an opportunity to supplement briefly the asylum issue? Because I do think in this case it's particularly important for two reasons. One, because it does change the level of proof he has to show for his fear of going back, if he's in asylum, as opposed to withholding, as opposed to CAD. And secondly, I do think the Court may well disagree with that, but I do think given the fact that the IJA's decision is a little bit very thin, I would like an opportunity to present this issue to the Court. I think it's essentially important to Mr. Yao. Okay. I understand you say you're going to submit a 28-J letter. I would like to request an opportunity to supplementarily brief that issue. I don't think we want any supplemental briefs, but if you want to file a 28-J letter, we can't stop you. We might even read it. I might do that. Thank you. And on the issue which you raised on the distinction between Yao on withholding and CAD, I do think that I thought about it more closely, and I do think the distinction is not on the proof itself, but it's on the things he has to prove. I think the Convention Against Torture requires torture, whereas asylum withholding requires persecution. And I do think that what the government argued is that even if he's persecuted, there's not a rise to the level of torture. And I think that's a decision the Xiang Court made, that because they were reeducated as opposed to being tortured, that it was not a CAD case, but it was a withholding case. In either event, it shouldn't prevent Mr. Yao from receiving withholding from this court. And then the government cited to page 120 of the record as evidence that they did not persecute people who are not court members. But I did point to page 120, and I did highlight what it says. Excuse me. And it says that on our second, third full paragraph, that during the year, there were numerous credible reports of abuse and even killings of Falun Gong practitioners by police and other security personnel, including police involvement in beatings, detention under extremely harsh conditions, and torture, including by electric shock and by having hands and feet shackled and linked with cross steel chains. I do think that this does raise a very strong specter of torture in this case. So I do think that Mr. Yao qualifies for both withholding and the conviction as torture. Okay. If you do decide you're going to do a 28-J letter, please be sure you comply with the rules on that. We've noticed an increasing tendency of late for, shall I say, clever attorneys to use 28-J language to basically supplementally brief the case. 28-J letters have a very limited and specific purpose. So if you're confined to that, we would, of course, be happy to receive it. And same thing with the government. So are you all set then? I'll be very happy to comply. Thank you very much, Your Honor. Very good. Thank you both for your argument. The case of Yao v. Mukasey is submitted. And we will now hear the case of Wu v. Mukasey for 15 minutes aside.
judges: Canby, Thompson, Smith